IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| CRICKET GROUP, LIMITED t/d/b/a | * | |
| PPM TRANSPARENCY GROUP, | * | |
| | * | |
| v. | * | Civil No. JFM-15-3159 |
| | * | |
| HIGHMARK, INC. | * | |
| | * | |
| | ****** | |

## MEMORANDUM

Plaintiff Cricket Group, Limited t/d/b/a PPM Transparency Group ("Cricket") brings this lawsuit against defendant Highmark, Inc. ("Highmark"), seeking to recover damages from an alleged breach of contract for consulting services. Pending is Highmark's motion to dismiss the amended complaint for lack of personal jurisdiction.[1] (ECF No. 18). The motion is fully briefed, and no oral argument is necessary. *See* Local Rule 105.6. For the reasons stated below, this court cannot exercise personal jurisdiction over Highmark. Pursuant to 28 U.S.C. § 1406, the case is transferred to the Western District of Pennsylvania.

## BACKGROUND

Cricket is a Nevada corporation with its principal place of business in Garrett County, Maryland; Highmark, a national health insurance provider, is a Pennsylvania corporation with its principal place of business in Pittsburgh. (ECF No. 1, Ex. 1, p. 1). On or about November 2013, the parties entered into a contract under which Cricket was to provide certain consulting services

---

[1] Highmark had previously filed a motion to dismiss the original complaint (ECF No. 9), but filed the instant motion in response to Cricket's amended complaint. Accordingly, this memorandum treats Highmark's second motion as the operative motion to dismiss, and the first will be denied as moot.

to Highmark.  (ECF No. 12, ¶ 13).  According to Cricket, it provided these services, but Highmark did not pay for a substantial portion of them.  (*Id*. at ¶¶ 29-31).

Cricket filed suit in this court on October 19, 2015, seeking damages from the alleged breach of contract.  (ECF No. 1).  Highmark moved to dismiss the action, claiming the allegations in the complaint were insufficient to establish personal jurisdiction.  (ECF No. 9).  In response, Cricket filed an amended complaint, seeking to clarify the basis for this court's personal jurisdiction over Highmark.  (ECF No. 17).  Highmark then filed another motion to dismiss on the same basis.  (ECF No. 18).  By an Order dated February 5, 2016, this court permitted the parties to conduct jurisdictional discovery.  (ECF No. 24).  Following such discovery, Highmark reasserted its argument that it is not subject to personal jurisdiction (ECF No. 27); Cricket continues to oppose Highmark's motion.  (ECF No. 28).

## STANDARD

When a defendant files a motion to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of proving grounds for jurisdiction by a preponderance of the evidence.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (citation omitted).  The plaintiff must "produce competent evidence to sustain jurisdiction, including, for example, sworn affidavits."  *Allcarrier Worldwide Servs., Inc. v. United Network Equip. Dealer Ass'n*, 812 F. Supp. 2d 676, 680 (D. Md. 2011).  If the jurisdiction issue is decided without a hearing, the plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge."  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009).  In considering a personal jurisdiction challenge in the absence of an evidentiary hearing, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the

existence of jurisdiction." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) (internal quotation marks, citation, and emphasis omitted).

## ANALYSIS

For a district court to exercise personal jurisdiction over a nonresident defendant like Highmark, two conditions must be satisfied: the state's applicable long-arm statute must confer jurisdiction, and the assertion of jurisdiction must comport with constitutional due process under the Fourteenth Amendment. *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Maryland courts have consistently held that Maryland's long-arm statute "is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution," and so the statutory inquiry necessarily "merges with [the] constitutional examination." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (quoting *Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*, 878 A.2d 567 (Md. 2005)).

Under this due process analysis, jurisdiction can be either specific or general; Cricket asserts that the court has both. For a court to have specific jurisdiction over a defendant, the defendant must have "purposefully established minimum contacts in the forum State" such that it "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985) (internal quotation marks and citations omitted). The level of contacts required for the exercise of general jurisdiction is markedly higher: the defendant's activities within a forum state must have been "continuous and systemic." *Perdue*, 814 F.3d at 188.

Here, although Cricket alleges several contacts between Highmark and Maryland, they do not present a sufficient jurisdictional basis for this court to adjudicate Cricket's claims. I will address the specific jurisdiction issue first.

## A.      Specific Jurisdiction

In order to determine whether a defendant can be held subject to specific jurisdiction in Maryland, this court considers:  (1) whether the defendant "purposely directed its activities toward residents of Maryland or purposely availed itself of the privilege of conducting activities in the state;" (2) whether its claims "arise[] out of or result[] from" those activities; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable."  *Cole–Tuve, Inc. v. Am. Mach. Tools Corp.*, 342 F. Supp.2d 362, 366 (D. Md. 2004) (internal quotation marks and citation omitted).  The plaintiff must prevail on each prong in order for the court to assert specific jurisdiction over the defendant.  Only if the court finds that the plaintiff has satisfied the first prong of this test does it then consider prongs two and three.  *Consulting Eng'rs*, 561 F.3d at 278.  For the following reasons, Cricket falters on the first prong.

The Supreme Court has made clear that an out-of-state party's contract with a forum-based party cannot "automatically establish sufficient minimum contacts" in the forum, even where the dispute arises from that agreement.  *Burger King*, 471 U.S. at 478.  Instead, the court must perform an "individualized and pragmatic inquiry" into the facts surrounding the contract to determine whether it "had a 'substantial connection' to the forum state," such that "the defendant purposefully established minimum contacts within the forum."  *Johansson Corp. v. Bowness Const. Co.*, 304 F. Supp. 2d 701, 705 (D. Md. 2004) (quoting *Burger King*, 471 U.S. at 479); *see also Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 451 (4th Cir. 2000) (a court may exercise specific jurisdiction "when the contacts relate to the cause of action and create a substantial connection with the forum state.")

In making this determination, courts consider a variety of nonexclusive factors, including: (1) whether the defendant "maintains offices or agents in the forum state," (2) "owns

property in the forum state," (3) "deliberately engaged in significant or long-term business activities in the forum state," (4) "reached into the forum state to solicit or initiate business," or (5) "made in-person contact with the resident of the forum in the forum state regarding the business relationship." *Consulting Eng'rs*, 561 F.3d at 278. Courts also consider (6) "whether the parties contractually agreed that the law of the forum state would govern disputes," (7) "the nature, quality and extent of the parties' communications about the business being transacted," and (8) "whether the performance of contractual duties was to occur within the forum." *Id.*

This court cannot conclude, based on the facts surrounding the contract at issue, that Highmark had a "substantial connection" with Maryland. First, it is undisputed that Highmark has never established a physical presence in Maryland: Highmark has no offices in Maryland, owns no property in Maryland, has no employees or registered agents in Maryland, and is not registered to do business in Maryland. (ECF No. 9, Ex. 1, ¶¶ 4-5). Moreover, every in-person meeting between Cricket and Highmark took place in Pennsylvania, not Maryland. (*Id.* ¶ 9). And although many contacts between the two parties occurred via email, telephone, or instant messaging, such communications do not provide sufficient contacts to justify exercising personal jurisdiction over Highmark. *See Johansson*, 304 F. Supp. 2d at 706 ("the negotiations that occurred via mail or telephone contacts from North Carolina into Maryland cannot provide sufficient minimum contacts for the exercise of personal jurisdiction."); *see also Stover v. O'Connell Associates, Inc.*, 84 F.3d 132, 137 (4th Cir. 1996) (recognizing that "the use of a telephone to facilitate transactions between remote locations serves as an alternative to presence," and that "[t]o conclude that such activity establishes presence in a state would upset generally held expectations.") (emphasis omitted). Lastly, it is telling that the parties chose Pennsylvania law, and not Maryland law, to govern their contract: the contract's choice-of-law

provision states that the agreement "shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." (ECF No. 1, Ex. 1, p. 23); *see Mun. Mortgage & Equity v. Southfork Apartments Ltd. P'ship*, 93 F. Supp. 2d 622, 629 n.6 (D. Md. 2000) ("[A] choice of law provision which opts away from the forum state, when combined with other factors disfavoring the exercise of personal jurisdiction, raises the negative implication that personal jurisdiction in the forum state was not contemplated."). Accordingly, all of these facts are manifestly inconsistent with Cricket's claim that Highmark deliberately undertook contractual activity in Maryland and thereby invoked the "benefits and protections" of Maryland law. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

That Highmark allegedly initiated contact with Cricket would not justify the exercise of personal jurisdiction in this case. Although an important factor in determining purposeful availment is "whether the defendant initiated the business relationship in some way," it is unclear whether Cricket or Highmark did so. *Giannaris v. Cheng*, 219 F. Supp.2d 687, 692 (D. Md. 2002) (internal quotation marks and citation omitted). Cricket cites evidence that Highmark's contractor "had mentioned the Cricket Group as a potential solution" to its ongoing issues and so the contractor "had conversations with [Cricket] to talk about what it was [Highmark was] doing"—after which Cricket "provided some e-mails to [Highmark's contractor] saying this is the solution that they would offer." (ECF No. 28, Ex. 1, p. 10-11). But the fact that Highmark "may have initiated *communications* [with Cricket in] Maryland does not suffice to show that they initiated the *relationship* with [Cricket]." *Fyfe Co., LLC v. Structural Grp., LLC*, No. CCB-13-176, 2013 WL 2370497, at *4 (D. Md. May 30, 2013) (emphasis in original). Moreover, even if Highmark *had* initiated the business relationship with Cricket, that fact would not overcome the foregoing suite of factors weighing against purposeful availment. *See Consulting*

*Eng'rs*, 561 F.3d at 280 (noting that even though the plaintiff "reached out [to the defendant]," that fact, "even when coupled with [other] communications, is not enough to overcome the [other] factors.").

Cricket's remaining arguments may be briefly disposed of. It asserts that various subsidiaries of Highmark are "active in Maryland" and are licensed by the Maryland Insurance Administration—facts which, according to Cricket, demonstrate Highmark's purposeful availment. (ECF No. 23, p. 6-7). It is well-established, however, that "the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). And Cricket has proffered "no evidence of the nature of the relationship between [Highmark] and its [subsidiaries] that would justify an exception to this general rule." *Id.* at 276-77. Cricket also argues that Highmark has contacts with Maryland because it provides health insurance to residents in several Maryland counties. But such ties "have no connection with the instant contractual dispute," and so cannot be considered as contacts in the court's purposeful availment analysis. *Perdue Holdings, Inc. v. BRF S.A.*, 45 F. Supp. 3d 514, 518 (D. Md. 2014); *see Diamond Healthcare*, 229 F.3d at 450 (explaining that a court may exercise specific jurisdiction "*when the contacts relate to the cause of action* and create a substantial connection with the forum state.") (emphasis added).

This court is furthermore not persuaded that it should consider Cricket's services for Highmark to constitute transacting business in Maryland. There is no dispute that the remote consulting services Cricket provided could have been performed anywhere. And there is no evidence that Highmark, in contracting with Cricket to perform such services, either "sought to endorse Maryland businesses," or sought a relationship with a business "with Maryland contacts." *Zavian v. Foudy*, 747 A.2d 764, 770 (Md. Ct. Spec. App. 2000). At most, the

services Cricket provided could be considered "business *from* Maryland . . . rather than business *within* Maryland." *Id*. at 770-71 (emphasis in original) (declining to consider services rendered in Maryland as contacts because the services "could have been conducted from anywhere," and there was no evidence that the recipient sought to contract with an entity because of its Maryland contacts). For these reasons, the nature and location of the services Cricket provided to Highmark do not counsel in favor of exercising specific jurisdiction over the defendant in Maryland.[2]

In sum, this court cannot conclude that the contract between Cricket and Highmark had a "substantial connection" to Maryland such that Highmark purposefully availed itself of the privilege of conducting business in the state. Accordingly, Cricket has not established a basis for the court to exercise specific personal jurisdiction in this forum.

### B. General Jurisdiction

Cricket's general personal jurisdiction argument also fails. The threshold level of contacts required for the exercise of general jurisdiction is "significantly higher" than that for specific jurisdiction. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997); *see* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067, at 295-98

---

[2] Finally, I note that Cricket's reliance on two cases in which a court found purposeful availment—*Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553 (4th Cir. 2014) and *Dev. Design Grp., Inc. v. Deller*, CCB-10-53, 2012 WL 1098603 (D. Md. Mar. 30, 2012)—is misplaced. In both cases, the defendant's contacts with the forum state were significantly more robust than they are here. In *Universal Leather*, the foreign plaintiff "traveled to [the defendant's] offices in North Carolina on several occasions," conducted "at least six business meetings" with the defendant in the forum, and "corresponded by e-mail with [the defendant] on a weekly basis over the course of two years." 773 F.3d at 562 (internal quotation marks omitted). Likewise, in *Development Design*, the foreign defendants were "involved in nearly a decade of communications and transactions" with the forum-based plaintiff "culminating in the contract at issue," and visited the forum in connection with the transaction at issue; moreover, the contract between the parties included a provision selecting the law of the forum state as governing. 2012 WL 1098603, at *15-19.

(1987) ("threshold contacts required for general jurisdiction are very substantial, indeed"). A corporation's "place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (internal quotation marks and citation omitted). A court may assert general jurisdiction over a defendant only if its activities in the forum "are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also International Shoe v. State of Washington*, 326 U.S. 310, 318 (1945) (the defendants contacts with the forum must be "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.").

Highmark's contacts with Maryland are insufficient to establish general personal jurisdiction. Cricket first argues that general jurisdiction is proper because Highmark holds a license with the Maryland Insurance Administration. (*See* ECF No. 17, ¶ 7). Cricket later backtracks from this allegation, however, and concedes that it is not Highmark, but rather Highmark's subsidiary, that holds such a license. (*See* ECF No. 23, pp. 6-7, 9-10). According to Cricket, even this conceded fact supports general jurisdiction. Not so. As discussed above, it is axiomatic that "the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity," *Saudi*, 427 F.3d at 276; a court may do so "only if the parent exerts considerable control over the activities of the subsidiary." *Mylan*, 2 F.3d at 61. In order to make such a determination, a court considers "whether significant decisions of the subsidiary must be approved by the parent," as well as whether the parent and subsidiary "maintain separate books and records, employ separate accounting procedures, and hold separate directors' meetings." *Id.* Cricket makes no argument to that effect.

Further, as to Cricket's assertion that Highmark advertises in Maryland and insures residents in a number of Maryland counties, advertising and doing some business in the forum are insufficient for a court to exercise general jurisdiction. In *Daimler*, the Supreme Court held that a California district court did not have general jurisdiction over the defendant even though its subsidiary (whose contacts were attributed to the defendant) operated several facilities in the state and generated 2.4 percent of its parent corporation's worldwide sales there. 134 S. Ct. at 760-62; *see also Crussiah v. Inova Health Sys.*, TDC-14-4017, 2015 WL 7294368, at *3 (D. Md. Nov. 19, 2015) (declining to exercise general jurisdiction where the defendant's contacts with Maryland "consist[ed] of advertising to Maryland customers[,] providing some medical services in Maryland[,] . . . and employing a physician's group in Maryland."). For all of these reasons, this court will not exercise general jurisdiction over Highmark.

*    *    *

On these facts, Highmark's contacts with Maryland are simply too attenuated to justify this court's exercise of personal jurisdiction. Rather than dismiss the case entirely, however, this court will exercise its discretion to transfer the case to the United States District Court for the Western District of Pennsylvania, as Highmark requests. *See* 28 U.S.C. § 1406(a) (providing that if a plaintiff files suit in the wrong venue, the district "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought."). A case may be transferred based on lack of personal jurisdiction to another district where the defendant is subject to personal jurisdiction. *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir. 1988).

The defendant argues (and Cricket does not dispute) that jurisdiction is proper in the Western District of Pennsylvania—indeed, Highmark is a Pennsylvania corporation and has its principal place of business in Pittsburgh. Although Maryland "generally has a manifest interest

in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors," *Burger King,* 471 U.S. at 473 (internal quotation omitted), that interest is diminished here because the court would be required to apply Pennsylvania law.  Finally, Cricket has not shown any countervailing concerns regarding transfer of the case to the Western District of Pennsylvania.   I conclude that is in the interest of justice to transfer this case to the Western District of Pennsylvania, rather than dismissing it for lack of personal jurisdiction and requiring Cricket to re-file in that district.

## CONCLUSION

For the foregoing reasons, the court will not exercise personal jurisdiction over Highmark.  The case will be transferred to the United States District Court for the Western District of Pennsylvania, and Highmark's motion to dismiss is denied.  A separate order follows.


  7/29/2016                                             /s/
Date                                          J. Frederick Motz
                                              United States District Judge